## SLEEP vs. HEYMANN.

*April 5 — May 31, 1883.*

FALSE REPRESENTATIONS: VOLUNTARY PAYMENT. *(1) Warrantor of land may recover money paid to discharge pretended lien.*

DEMURRER. *(2) Conditions of right to answer when demurrer stricken out.*

DEPOSITIONS. *(3) Notice, when may be given. (4) How authenticated when taken out of state.*

EVIDENCE. *(5) Parol evidence of collateral matters.*

1. One who, having purchased land after the docketing of a judgment against his grantor, and having.conveyed the same to a third party by warranty deed, is induced, by the false and fraudulent representations of the judgment creditor that the judgment had not been paid but was still a lien upon the land, and by a threat of enforcing the same, to pay the amount of such judgment, may recover such amount from the judgment creditor; and the latter cannot be heard to allege that the payment was voluntary.

2. Upon striking out a demurrer which has been interposed for the mere purpose of delay, the court may, in order to prevent delay, make it a condition of the right to answer that the defendant stipulate that a deposition may be taken on a notice theretofore given.

3. Notice of the taking of a deposition may be given before an issue of fact is joined.

4. Where a deposition is taken without the state before a notary public, his certificate need not be authenticated according to the laws of the United States, or by any certificate of his official character.

5. In an action to recover money fraudulently procured to be paid on a judgment which is alleged to have been fully satisfied before

such payment, the facts that an execution had been issued on the judgment, that a chattel mortgage had been given to secure payment thereof, that the execution had thereupon been indorsed as satisfied, and that such chattel mortgage had been assigned and afterwards fully paid, may be proved by parol evidence.

APPEAL from the Circuit Court for *Jefferson* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover from the defendant a certain sum of money which the plaintiff had theretofore paid to satisfy a judgment rendered in favor of the said defendant and one George McMillen, as plaintiffs, against one Gregory Witt, Sr., on or about the 20th of January, 1871. The allegations of the complaint show the recovery of the judgment and the docketing of the same, so as to make it a lien upon certain real estate described in said complaint and owned by the said Witt at the time of the docketing thereof. The complaint then shows that after the docketing of said judgment, and after the same became a lien upon said real estate of the said Witt, Witt conveyed said real estate to the plaintiff, and that before the payment of the money by said plaintiff to satisfy said judgment, he had conveyed said real estate to one Margaret Smith by warranty deed, with covenants as to title and against incumbrances; that after he had so conveyed said lands to said Smith, he was notified by the defendant that said judgment remained wholly unpaid, and that unless the same was paid the defendant would cause execution to be issued thereon, and that the amount thereof would be collected out of the lands so purchased and sold by the said plaintiff. The allegations of the complaint upon this point are as follows:

"'4. That on or about the 24th day of November, A. D. 1880, in said county of Jefferson, state of Wisconsin, the said defendant, *John Heymann*, then well knowing that the said judgment had been so fully paid as aforesaid by said Gregory Witt, Sr., and with intent to deceive and defraud

the plaintiff by obtaining money from him under false pretenses, falsely and fraudulently represented to the plaintiff that the said judgment had not been paid, and that it was wholly unpaid and then a valid subsisting lien and incumbrance upon the said real estate, and then and there threatened to proceed at once to levy upon and sell said real estate to pay said judgment, and thereby make additional costs for plaintiff to pay, unless plaintiff would at once pay the said judgment.

" ' 5. That the said Gregory Witt, Sr., and the said George McMillen were, at the time said false and fraudulent representations were so made to plaintiff, and for a long time theretofore had been, and still are, non-residents of this state, and their whereabouts were then unknown to the plaintiff; that plaintiff relied upon the said representations so made to him by said defendant, and then supposed them to be true, and was thereby, on said 24th day of November, A. D. 1880, induced to pay, and then did pay, to the clerk of said court for said defendant, to apply as part payment of said judgment, the sum of $293.34, and on the same day the said clerk, as plaintiff alleges upon information and belief, paid the same to said defendant, and one Cyrus Cushman at the same time, by reason of said representations, paid the balance then apparently due on said judgment.

" ' 6. That the said representations so made by said defendant to the plaintiff were, as plaintiff alleges upon information and belief, false, in that the said judgment had been theretofore fully paid to said *John Heymann* and George McMillen by said Gregory Witt, Sr., and the same was not then any part of it a valid or subsisting lien or incumbrance on any part of said real estate, and the said representations were then well known to the defendant to be false, as the plaintiff alleges upon information and belief; and plaintiff did not learn that they were false until some time in the spring of 1881.

" ' 7. That in consequence of said false and fraudulent rep-

resentations the plaintiff has been required to make and has made several trips from his residence in Palmyra to Jefferson, and into the towns of Sullivan and Hebron, in said county, and has necessarily incurred expense on said trips, and in ascertaining the falsity of said representations, which said expenses and the value of plaintiff's time so devoted to said trips, and to ascertaining the falsity of said representations, amount to and are well and reasonably worth the sum of $100.

" ' 8. That before the commencement of this action the plaintiff duly demanded of the defendant that he pay back to the plaintiff the sum of $293.34 so paid by the plaintiff as aforesaid on the 24th day of November, A. D. 1880, to and for the defendant, and that he also pay to the plaintiff the said additional sum of $100, being the amount of plaintiff's time and expenses as stated in the preceding subdivision of this complaint, together with interest on the said sum of $293.34 from the 24th day of November, A. D. 1880; but that the said defendant has failed and neglected to pay, and has not paid, the same or any part thereof, to plaintiff's damage of $393.34, with interest as aforesaid. Wherefore, the plaintiff demands judgment against said defendant for the sum of $393.34, with interest thereon from the 24th day of November, 1880, together with the costs of this action.'

" To this complaint the defendant demurred, assigning the following causes of demurrer: ' (1) That said complaint does not state facts sufficient to constitute a cause of action; (2) that there is a defect of parties plaintiff, and that said defect consists in the omission of the name of Cyrus Cushman, who should be joined as a party plaintiff herein; (3) that there is a defect of parties defendant, and that said defect consists in the omission of the name and person of George McMillen, who should be joined as a party defendant herein.'

" The plaintiff moved to strike out the demurrer as frivo-

lous, and for judgment. On the hearing of this motion the circuit court ordered the same to be stricken out as frivolous, ' with leave to the defendant to answer within five days after service of a copy of this order, on payment of $10 costs, and stipulating to accept the notice heretofore served for taking the deposition of George McMillen by and before John M. Rogan, a notary public at Hastings, Adams county, Nebraska, on the 31st day of January, 1882, as a good and sufficient notice for that purpose.' This order was dated January 5, 1882. The defendant excepted to the order, but paid the $10 costs, entered into the stipulation, and filed his answer."

The answer admits that on or about January 20, 1871, the defendant and George McMillen, who were then partners under the firm name of John Heymann & Co., recovered a judgment against Gregory Witt, Sr., and that the same was docketed and became a lien upon the land of said Witt; that on or about November 24, 1880, the plaintiff and Cushman paid to the clerk of the court the amount of said judgment and interest, except the sum of about $14, and that the clerk paid the same to the defendant; and that the plaintiff's attorneys demanded of the defendant the payment of $293.34, with interest from November 24, 1880, and the further sum of $100 for the plaintiff's time and expenses in the matter, and that the defendant has not paid the same. As to the conveyance from Witt to the plaintiff and from the plaintiff to Margaret Smith, the defendant denies any information sufficient to form a belief.

The answer also contains a general denial of all allegations of the complaint not therein admitted, and alleges that on January 20, 1872, the partnership of John Heymann & Co. was dissolved and the defendant became the owner of all the credits of that firm, including said judgment; and that said judgment was never paid or satisfied in whole or in part until the plaintiff and Cushman paid the amount thereof, less $14, on the 20th of November, 1880.

At the trial, before the jury was called, the defendant objected to the validity and admissibility of the deposition of George McMillen and moved that it be suppressed for the reasons: (1) That the notice of taking the same was served before any issue was joined in the action, and was otherwise insufficient; (2) that the certificate of the officer purporting to have taken such deposition was insufficient and not properly authenticated; (3) that the taking of the deposition and the certification thereof was not in accordance with the statutes of this state. The objection was overruled and the motion denied. An objection to the admission of any evidence under the complaint was also overruled.

The deposition of George McMillen was offered in evidence by the plaintiff. It was taken before a notary public in Adams county, Nebraska, and had annexed thereto a certificate of such notary public, under his seal, in the form prescribed by sec. 4106, R. S., also a certificate of the official character of the notary and the genuineness of his signature, under the seal of Adams county, Nebraska, and signed by the "county clerk in and for said county and state, and custodian of the roster of county and precinct officers therein." The witness, in the deposition, testified that he was one of the plaintiffs in the judgment against Gregory Witt, Sr. The fifth and sixth interrogatories and the answers thereto were as follows:

"Int. 5. Was that judgment ever paid by Gregory Witt, Sr.? If so, state when, how, and all the circumstances connected with such payment.

"Ans. It was fully paid by the said Witt, Sr. In the fore part of March, 1871, an execution on the judgment was in the hands of Jo. Giles, sheriff or deputy. I went with Giles to collect the execution down to Rome, in the town of Sullivan, where the said Witt lived. Giles levied the execution on some stock of Witt and was driving it away. We stopped and went into the hotel. Soon H. D. Sprague, who seemed

to be acting for Witt, came in and asked me if I had not rather have a chattel mortgage for the whole judgment. I told him I had. He went away and after a while came back with a chattel mortgage, executed by Gregory Witt, Sr., upon his stock. He handed the mortgage to me, I saw it was for the full amount of the judgment and Giles's costs, and said it is all right. Sprague then said the execution must now be indorsed satisfied. I said yes, and Giles wrote across the execution satisfied. I then handed Sprague the mortgage with fees for filing, and requested him to see the mortgage filed. The stock we levied on was released from the execution.

"Int. 6. What knowledge, if any, did the defendant, *John Heymann*, have of this payment, and what became of the chattel mortgage?

"Ans. Before Giles and I went down to Rome with the execution he knew we were going down there to collect it. We did not return to Watertown till late that night, and next day in our store in my presence Giles reported to *Heymann* all we had done at Rome and how we had taken the chattel mortgage in payment of the judgment and how the execution had been indorsed satisfied, and the levy we had made had been released. *Heymann* expressed himself pleased and satisfied with the arrangement, although he said he had a little fear Witt might sell the property. Giles and I both told *Heymann* all about it. Soon after we got the chattel mortgage, J. G. Hull, of Farmington, was pressing *Heymann* and me for some money we had borrowed of him, and that was due, and *Heymann* proposed that we assign this chattel mortgage to him in payment or part of payment of the debt, and we did assign the mortgage in payment of our debt to him, and afterwards Witt paid the mortgage to Hull. Hull reported the payment to *Heymann*, and in a few days afterwards we gave Witt credit on our books for the amount of the mortgage, and charged Hull with the amount."

Both the interrogatories and the answers thereto were objected to by the defendant, but the objections were overruled.

Other evidence given at the trial will appear from the opinion. A motion for a nonsuit made at the close of the plaintiff's testimony was denied.

The third, fifth, sixth, and seventh instructions asked by the defendant and refused by the court, were as follows:

" 3. There is no presumption that the judgment in question was paid, arising from the fact that the judgment was not collected before November 24, 1880.

" 5. If you find from the evidence in the case that the plaintiff on the 24th day of November, 1880, had no ownership or interest in the title to the land mentioned in the complaint, then your verdict must be for the defendant.

" 6. If you find from the evidence in the case that on the 24th day of November, 1880, the plaintiff had no interest in the title to the land mentioned in the complaint, and paid the money on said judgment to the clerk of the court, it was a voluntary payment and he cannot recover it in this action.

" 7. If you find from the evidence in the case that the plaintiff paid the money in question to the clerk without any protest or notice to the defendant, it was a voluntary payment and the plaintiff cannot recover."

There was a verdict for the plaintiff, and from the judgment entered thereon the defendant appealed.

*Harlow Pease,* for the appellant, contended, among other things, that the taking of the deposition of McMillen was a judicial proceeding in another state, and it should have been authenticated according to sec. 905, R. S. of U. S.

For the respondent there was a brief by *I. W. & G. W. Bird,* and oral argument by *Mr. G. W. Bird.*

TAYLOR, J. The learned counsel for the appellant insists that the order striking off the demurrer as frivolous was

erroneous, and claims that the complaint was bad for the reason first assigned, that it does not state facts sufficient to constitute a cause of action.  We think the allegations of the complaint are sufficient to show that the plaintiff was induced to pay the money to the clerk of the court in satisfaction of the judgment set out in the complaint, by reason of the false statement made by the defendant that such judgment remained unpaid and unsatisfied, and that he would not have paid the same if such false statement had not been made by the defendant.  The defendant cannot be permitted to allege that the payment was a voluntary payment on the part of the plaintiff with full knowledge of all the facts, when it appears that such payment was made by reason of his false statements as to the fact of its being an existing unpaid judgment which was a lien upon the lands which the plaintiff conveyed with covenants against incumbrances, accompanied with a threat that unless the judgment was immediately paid and satisfied he would issue execution thereon, and collect the amount of the same out of the lands so conveyed by said plaintiff

The mere statement of facts is sufficient to convict the appellant of a gross fraud, if he knew that the judgment had in fact been paid, and upon the demurrer to the complaint his knowledge of the previous payment thereof is admitted.  It needs no citation of authorities to show that the appellant had no right to retain the respondent's money, obtained, either directly or indirectly, by such a fraudulent representation on his part.  Had the appellant told the truth in regard to the matter, it is quite clear the respondent would not have paid his money to the clerk to satisfy the judgment. Having induced its payment by a false statement made for that purpose, and the money having been paid to the clerk relying upon the truth of such statement, the appellant was not entitled to receive such money from the clerk and hold the same against respondent.  Having induced the payment

by a false and fraudulent representation, his receipt of the money from the clerk was tortious, and an action of tort will lie for the recovery thereof. The following cases, cited by the learned counsel for the respondent, fully sustain the sufficiency of the complaint to charge the appellant with fraud: *Smith v. Mariner*, 5 Wis., 551; *Miner v. Medbury*, 6 Wis., 295; *Kelley v. Sheldon*, 8 Wis., 258; *McClellan v. Scott*, 24 Wis., 86; *Birdsey v. Butterfield*, 34 Wis., 52; *Law v. Grant*, 37 Wis., 548; *Simmons v. Aldrich*, 41 Wis., 241. The other grounds of demurrer were not insisted upon in this court, and it is evident they were not well taken.

It is urged that the circuit court had no authority to direct the appellant, as a condition of his right to answer after the demurrer was stricken out, that he should stipulate to take the deposition of the witness McMillen upon the notice for that purpose which had been served upon him.

If it appeared to the court that the demurrer was interposed for the mere purpose of delay, then we think such a condition was a proper one to make in the case, so as to prevent the accomplishment of that purpose. And again, as the only apparent objection to the notice which had been given was that it was served before an issue of fact had been joined in the case, the notice was in fact properly served, and would have been entirely sufficient to accomplish its purpose without any stipulation on the part of the appellant. See secs. 4102, 4110, 4112, R. S. 1878.

The objection that the deposition of McMillen was not properly certified is clearly unfounded. See *Hayes v. Frey*, 54 Wis., 503.

The objection to receiving any evidence under the complaint was properly overruled, for the reason given for striking off the demurrer.

It is alleged as error that the court permitted the answers of McMillen to the fifth and sixth interrogatories in his deposition to be read to the jury. It will be seen by an ex-

amination of the deposition that the interrogatories were put to the witness McMillen for the purpose — *First,* of showing that the judgment in question had been fully paid long before the money was paid by the respondent to the clerk of the court; and, *second,* to show that the appellant had full knowledge of such payment.

The witness McMillen was the person in whose favor, jointly with the appellant, the judgment was rendered, and it also appeared that the appellant and McMillen were partners in business when the judgment was obtained and when the alleged payment was made. After a careful examination of the answers objected to, we can see nothing in them which is not competent and material for the purposes for which they were offered. It appeared from the evidence that Witt had given a chattel mortgage to secure the payment of the judgment in question, and that he afterwards paid the amount due on the chattel mortgage. One Sprague was called as a witness by the respondent to prove that Witt gave a chattel mortgage to secure the payment of this judgment, and that, upon giving such chattel mortgage, the sheriff, who had an execution upon the judgment, by the direction of McMillen, indorsed the same satisfied. This evidence was objected to by appellant on the ground that it was not the best evidence of the fact; that the mortgage and execution were the best evidence; and that parol evidence of them ought not to have been received. We think the evidence was competent. The question in controversy between the plaintiff and defendant was whether the judgment had been paid. Neither were seeking to recover, in this action, either upon the judgment or mortgage, but in order to show that the judgment had been paid, it was necessary to show that a mortgage had been given for the amount thereof, and that such mortgage had been fully paid. The existence of the mortgage was a collateral matter, and it was not error to allow parol evidence of the fact. See *Gordon v. Mulhare,* 13 Wis., 22; *Hawes v.*

*Woolcock,* 30 Wis., 213; *Teegarden v. Town of Caledonia,* 50 Wis., 292; *Supples v. Lewis,* 37 Conn., 568; *St. Louis & C. R. R. R. Co. v. Eakins,* 30 Iowa, 279; *Rayner v. Lee,* 20 Mich., 384; 1 Greenl. on Ev., secs. 89, 90; *McFadden v. Kingsbury,* 11 Wend., 667.

The respondent afterwards offered in evidence a copy of the mortgage, with an assignment thereof indorsed thereon signed by the appellant. This copy of mortgage, with the assignment thereon, was produced by the town clerk, who testified that the same was filed in his office. The assignment on the back of this copy of mortgage assigns " a chattel mortgage now on file in the office of the town clerk of said town of Farmington, of which said mortgage the within is a true copy." This, we think, was sufficient evidence against the appellant of the existence of a mortgage of which the copy produced was a true copy for the purposes of this action.

The appellant denied the execution of the assignment, but whether he executed the assignment or not was a question for the jury, and went to the question of his knowledge of the actual payment of the judgment. The jury have found against him on that issue, and their finding is final in this case. It is very clear that the court properly overruled the motion for a nonsuit. There was certainly evidence in the case which tended strongly to show that the judgment had been paid and satisfied long before the respondent paid the money to the clerk of the court, and that the appellant had knowledge of such payment. Upon the evidence it was clearly a question for the determination of the jury and not for the court.

Several exceptions were taken to the instructions given by the learned circuit judge to the jury, and exceptions were also taken to the refusal of the judge to give certain instructions asked. We think the judge submitted all the issues in the case plainly and fairly. He said: " You are brought to

the determination of these three propositions of fact: *First.*
Was the judgment paid in March, 1871? You have the tes-
timony before you. You are to find from this testimony,
taking it altogether, whether in fact that judgment was paid.
*Second.* Did the defendant know, on or about the 24th of
November, 1880, when the plaintiff paid $293.34 as in satis-
faction of this judgment, that the judgment had been paid
in March, 1871? If he did not know it, then he did not
commit a fraud on the plaintiff in representing that it had
not been paid. The fraud, if any there was, consisted in
making representations which he knew to be false, and which
he made with the intention to deceive and defraud the plaint-
iff, to induce him to pay money that he was not liable to pay
nor the defendant authorized to demand. *Third.* Did the
plaintiff pay the $293.34 on the 24th of November, 1880, as
in satisfaction of the judgment, at the request of the defend-
ant and on his representation that the judgment had not
been paid? I have already stated that there is no contro-
versy as to the fact that the defendant at that time repre-
sented that the judgment had not been paid. He admits it,
and admits that he insisted on prompt payment. The vital
question is, Did he at that time, when he represented that
the judgment had not been paid, actually know to the con-
trary? So that, if you find that the judgment had been
actually paid to McMillen, and the defendant did not know
the fact, he committed no fraud in representing that it had
not been paid."

No part of the charge above quoted was excepted to by
the defendant, and it was undoubtedly sufficiently favorable
to him; and we think it presented the whole case to the
jury. The first, second, and fourth instructions asked by
the defendant and refused by the court were given in the
general charge, and so it was not error to refuse to repeat
them. The third instruction asked was irrelevant. It was
an abstract proposition of law not in the case. The fifth

instruction asked and refused was properly refused. Although the plaintiff had no ownership or interest in the land upon which the judgment was a lien on the 24th day of November, 1880, when he paid the money in satisfaction of the judgment, that fact would not justify a verdict in favor of the defendant. The evidence shows that he had owned the land and conveyed the same by warranty deed, with covenants against incumbrances, after the judgment had been docketed and while it was a lien upon such land; if it had not been paid he was interested in the payment of the judgment to the same extent as though he had owned the land at the time the money was paid by him.

The sixth instruction refused was in substance like the fifth, and was properly refused for the same reason. The seventh was properly refused. There was no question of voluntary payment in the case. The case appears to have been fairly tried and fairly submitted to the jury upon proper instructions, and the verdict is fully sustained by the evidence in the case.

*By the Court.*— The judgment of the circuit court is affirmed.